

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0771-17

## JOHN CHAMBERS, Appellant

## v.

## THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRTEENTH COURT OF APPEALS
## CAMERON COUNTY

NEWELL, J., delivered the opinion of the Court in which KELLER, P.J., and HERVEY, RICHARDSON, KEEL AND WALKER, JJ., joined. SLAUGHTER, J., filed a dissenting opinion in which YEARY, J., joined. KEASLER, J., dissented.

Can a person commit a crime if he falsifies a governmental record the government was not required by law to keep? Yes. A record kept by the government for information is still a governmental record even if the government was not required to keep it. However, if the government has no legal authority to require the record, a person cannot defraud or harm

the government by tampering with the record. Does this also mean that the falsification of the record in this case had no effect on the government's purpose for requiring the record? That is unclear. We must remand the case to the court of appeals to consider that question because it was raised below but left unanswered.

In this case, the Texas Commission on Law Enforcement audited the Indian Lake Police Department and found what it believed to be deficiencies in firearms-proficiency records for several volunteer reserve officers. To cure the deficiencies, Appellant, then-Police Chief John Chambers, directed a subordinate to falsify the records. The jury found Appellant guilty of 14 courts of tampering with a governmental record with the intent to defraud or harm.

On discretionary review, Appellant challenges the denial of a requested jury instruction on whether the records were required to be kept and the sufficiency of the evidence to show his intent to defraud or harm the government. He also asserts that the court of appeals did not address his argument about the sufficiency of the evidence to overcome a statutory defense that applies when the falsification of the record has no effect on the governmental purpose for the record. We hold that (1) Appellant was not harmed by the denial of the requested jury instruction;

(2) the evidence was insufficient to show intent to defraud or harm; and (3) the court of appeals should be given the opportunity to address his argument about the sufficiency of the evidence to overcome his statutory defense. We reverse and remand the case for the court of appeals to evaluate Appellant's statutory defense.

## Background

Appellant was the chief of the Indian Lake Police Department ("the Department") with a single paid subordinate, Alfredo Avalos. The Department had 20 to 30 reserve police officers, who were unpaid volunteers with active peace-officer licenses. In January 2015, the Texas Commission on Law Enforcement ("TCOLE") audited the Department's records. Derry Minor, TCOLE's field agent, discovered that the Department did not have valid firearms-proficiency records for at least eight reserve officers. He notified the Department of the alleged deficiency and gave the Department seven business days to correct the situation.

Appellant directed Avalos to handle the problem. According to Avalos, Appellant handed him a list of reserve officers and copies of old

firearms-proficiency forms that had some information "whited out."[1]

Avalos testified that Appellant told him to fill in the forms with the names on the list, to fill in a specific day as the qualifying date, and to list Appellant's firearm as the qualifying weapon, along with that firearm's serial number. According to Avalos and TCOLE investigator Jason Wayne Hufstetler, Avalos consulted with TCOLE about Appellant's instructions. TCOLE told Avalos to comply with the instructions and document the events.[2]

The State charged Appellant with 14 counts of tampering with a governmental record with intent to defraud or harm. Each count corresponded to a firearms-proficiency form for a reserve officer.[3] The intent-to-defraud-or-harm element elevated the offenses from Class A misdemeanors to state jail felonies. Multiple reserve officers testified to various discrepancies within the firearms-proficiency forms.

Appellant argued at trial that the false records were not

---

[1] The firearm-proficiency evaluator's signature and Appellant's signature were not "whited out." Additionally, the word "pass" was circled in one instance.

[2] Avalos testified that he was guaranteed immunity for his actions.

[3] Each count alleged that Appellant did, "with intent to defraud or harm another, namely, the State of Texas, knowingly make a false entry in a governmental record, to wit: firearms qualification record, said false entry being the name [of the officer], . . . date of qualifying, weapon used and the weapon serial number."

governmental records because the reserve officers were not employees who were required to undergo a firearms-proficiency qualification. Defense counsel questioned Agent Minor about this subject, but Agent Minor would not agree with counsel's interpretation of the law. Agent Minor did acknowledge that volunteer reserve officers were unpaid and were "appointed" rather than "employed." Based on this testimony, Appellant sought a jury instruction on § 341.012 of the Local Government Code. Specifically, Appellant argued:

> Section 341.012 establishes that a police department can have non-licensed peace officers serve a[t] the discretion of the police chief, and that they can carry firearms despite being non-licensed by [TCOLE]. The Statute further establishes that the *municipality* governs the standards and qualifications of reserves, not [TCOLE]. Thus, if the jury finds that the individuals listed in each count of the indictment were appointed reserves, [it] would need to be instructed that the firearms qualification information at issue was not information required to be kept by the government. Because the evidence adduced at trial supports such a finding, the jury should be so instructed in the charge.

The trial court did not agree with Appellant's interpretation of the law and denied the instruction because records kept by the Department were still governmental records even if TCOLE could not legally require the Department to keep them.[4] The jury found Appellant guilty on all 14

---

[4] Section 341.012 of the Local Government Code states, in relevant part:

counts in the indictment.[5]

Appellant argued on appeal that the evidence was insufficient to support his conviction. He asserted that the firearms-proficiency records at issue were not governmental records because TCOLE could not legally require the Department to keep them. This claim was intertwined with Appellant's argument that the evidence was insufficient to disprove his statutory defense in § 37.10(f) of the Texas Penal Code. That defense

---

(a) The governing body of a municipality may provide for the establishment of a police reserve force.

(b) The governing body shall establish qualifications and standards of training for members of the reserve force.

(c) The governing body may limit the size of the reserve force.

(d) The chief of police shall appoint the members of the reserve force. Members serve at the chief's discretion.

(e) The chief of police may call the reserve force into service at any time the chief considers it necessary to have additional officers to preserve the peace and enforce the law.

(f) A member of a reserve force who is not a peace officer as described by Article 2.12, Code of Criminal Procedure, may act as a peace officer only during the actual discharge of official duties.

(g) An appointment to the reserve force must be approved by the governing body before the person appointed may carry a weapon or otherwise act as a peace officer. On approval of the appointment of a member who is not a peace officer as described by Article 2.12, Code of Criminal Procedure, the person appointed may carry a weapon only when authorized to do so by the chief of police and only when discharging official duties as a peace officer. . . .

[5] The trial court sentenced him to two years' confinement in state jail, probated for five years, and assessed a $200 fine for each count. The suspended sentences of confinement were set to run concurrently, but the fines were cumulated, for a total of $2,800.

states: "It is a defense to prosecution under Subsection (a)(1), (a)(2), or (a)(5) that the false entry or false information could have no effect on the government's purpose for requiring the governmental record."[6] Appellant raised another sufficiency challenge, arguing that the evidence was insufficient to support the elevating element of intent to defraud or harm. He also challenged the trial court's denial of his requested jury instruction. The court of appeals rejected all of Appellant's claims and affirmed the trial court's judgment.[7]

## Appellant Was Not Harmed by the Lack of a "Required By Law" Jury Instruction

Appellant argues that the trial court erred by rejecting his requested jury instruction on the law regarding reserve officers (specifically, the instruction on Texas Local Government Code § 341.012). Error in the jury charge is subject to a harmless-error analysis.[8] If the appellant timely objected at trial to the jury-charge error, the reviewing court will reverse upon a showing of "some harm" to the appellant.[9] This means

---

[6] TEX. PENAL CODE § 37.10(f).

[7] *Chambers v. State*, 523 S.W.3d 681 (Tex. App.—Corpus Christi-Edinburg 2017).

[8] *See Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011).

[9] *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

that "the presence of *any* harm, regardless of degree, . . . is sufficient to require a reversal."[10]  If the appellant did not timely object, the court will reverse upon a showing of "egregious harm," which occurs when the error created such harm that the appellant was deprived of a fair and impartial trial.[11]  Under both harm standards, the appellant must have suffered some actual—rather than merely theoretical—harm.[12]  Here, assuming without deciding that Appellant properly preserved his claim and that the trial court erred in denying Appellant's requested instruction, we conclude that any error was harmless because Appellant did not even suffer "some harm."

Appellant argues that he was harmed by this jury-charge error because it "went to the core of [his] defense": "that the volunteer reserve officers . . . were not subject to TCOLE regulation and therefore, the firearm qualification documents . . . failed to fall within the definition of 'government[al] record.'"[13]  Appellant asserts that a document is a governmental record only if it is required by law to be kept or, at the very

---

[10] *Airline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).

[11] *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

[12] *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

[13] App. Br. 28.

least, is kept for a government purpose.[14] Because, in Appellant's view, the forms were not required by law to be kept or in fact kept for a government purpose, they were not governmental records. He asserts, therefore, that he was harmed by the absence of this instruction. To determine whether Appellant was harmed, we must determine whether the documents at issue were governmental records regardless of whether TCOLE could legally require the Department to keep them.

When interpreting a statute, we give effect to the plain meaning of the statute's language, unless the statute is ambiguous or the plain meaning leads to absurd results.[15] To determine plain meaning, we use rules of grammar and usage.[16] We presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible.[17]

Appellant's first argument that a document qualifies as a governmental record only if it is "required by law" to be kept is

---

[14] *Id.* at 17.

[15] *Liverman v. State*, 470 S.W.3d 831, 835–36 (Tex. Crim. App. 2015); *see also Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("[I]f the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.").

[16] *Liverman*, 470 S.W.3d at 836.

[17] *Id.*

inconsistent with the statutory text. The Penal Code contains a list of definitions of "governmental record," only two of which are at issue here:

>(A) anything belonging to, received by, or kept by government for information, including a court record;

>(B) anything required by law to be kept by others for information of government.[18]

Subsection (B) of the governmental-record definition requires the document to be "required by law." Subsection (A), however, does not. Reading that limitation into Subsection (A) would render the phrase "required by law" in Subsection (B) meaningless.[19] Thus, we reject Appellant's argument that there must be a showing that a particular governmental record was "required by law" before it can constitute a governmental record. The firearms-proficiency records in this case were both "received by" and "kept by" the government. Thus, they were still governmental records regardless of whether TCOLE could require the Department to keep them.

Regarding Appellant's alternative argument—that the document

---

[18] TEX. PENAL CODE § 37.01(2).

[19] *See Liverman*, 470 S.W.3d at 836 ("[W]e presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible."); *see also State ex rel. Wice v. Fifth Jud. Dist. Ct. App.*, ___ S.W.3d ___, 2018 WL 6072183, at *6 (Tex. Crim. App. 2018) (rejecting one possible interpretation because it would render certain statutory requirements meaningless).

must, at the very least, be kept for a government purpose to constitute a governmental record—he relies on a defense in the tampering statute. That defense states: "It is a defense to prosecution under Subsection (a)(1), (a)(2), or (a)(5) that the false entry or false information could have no effect on the government's purpose for requiring the governmental record."[20] Appellant essentially interprets the defense as imposing a "purpose" requirement in the governmental-record definition.

A general rule of statutory interpretation is that the expression of one thing implies the exclusion of other, unexpressed things.[21] The tampering statute provides six ways to commit the offense.[22] In the statutory defense, however, the Legislature expressly mentioned only three of the six, specifically, Subsections (a)(1), (a)(2), and (a)(5). The express statement of those three subsections implies that the statutory defense does not apply to Subsections (a)(3), (a)(4), and (a)(6). In other words, Subsections (a)(3), (a)(4), and (a)(6) are implicitly excluded. Accepting Appellant's interpretation would inappropriately

---

[20] TEX. PENAL CODE § 37.10(f). A defense to prosecution is labeled by the phrase: "It is a defense to prosecution...." TEX. PENAL CODE § 2.03(a).

[21] *State v. Hill*, 499 S.W.3d 853, 866 n.29 (Tex. Crim. App. 2016); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 107 (2012) ("The expression of one thing implies the exclusion of others (*expressio unis est exclusio alterius*).").

[22] TEX. PENAL CODE § 37.10(a).

extend the statutory defense to those excluded subsections despite the Legislature's express limitation. We reject Appellant's argument that a document must, at the very least, be kept for a government purpose to constitute a governmental record. Under the plain text of the statute, the purpose is relevant to the defense to prosecution, not an element of the offense.

In sum, Appellant's interpretation of the definition of "governmental record" conflicts with the statute's plain language. The firearms-proficiency records for the reserve officers were governmental records even without a showing that the Department was "required by law" to keep them. Consequently, the absence of an instruction on the issue of whether the Department was required by law to keep the records did not harm Appellant because it would have had no effect on the jury's determination that the firearms-proficiency records were governmental records.

## Sufficiency of the Evidence

Appellant also argues that the evidence is insufficient to establish that he acted with an "intent to defraud or harm." When reviewing the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational finder of fact

could have found the essential elements of the offense beyond a reasonable doubt."[23] Sometimes that is simply a matter of reviewing the record to determine whether there is sufficient evidence to establish a particular element of an offense. Sometimes that requires us to determine the meaning of the statute under which the defendant was prosecuted.[24] In other words, we ask if the defendant's conduct actually constitutes an offense under the statute.[25] Like all statutory interpretation questions, this is a question of law that we review *de novo*.[26] Here, Appellant's sufficiency challenge requires us to determine the meaning of the phrase "intent to defraud" as it is used within the applicable statute.

*Defining "Intent to Defraud"*

Tampering with a governmental record is a state jail felony if "the actor's intent [was] to defraud or harm another."[27] Without that intent, the offense is a Class A misdemeanor.[28] Appellant asserts that, even if

---

[23] *Liverman*, 470 S.W.3d at 835–36.

[24] *Id.* at 836.

[25] *Id.*

[26] *Id.*

[27] TEX. PENAL CODE § 37.10(c)(1).

[28] *Id.* This, of course, assumes the absence of other elevating elements.

the records at issue are governmental records, it was legally impossible for him to defraud or harm TCOLE because TCOLE had no authority to require the keeping of the records in the first place.[29] Therefore, Appellant argues, the evidence is insufficient to show an intent to defraud or harm TCOLE. We agree.

The Penal Code defines "harm" as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested."[30] "Defraud," however, is not statutorily defined. The court of appeals applied the following definition of "defraud": "to cause another to rely upon the falsity of a representation, such that the other person is induced to act or is induced to refrain from acting."[31] The court also noted that an intent to defraud does not require an intent to deprive the government of money or property.[32] Thus, according to the court, intent to defraud could be proven by evidence that Appellant intend to cause TCOLE to rely upon a false representation to act (or refrain from acting). But that definition is

---

[29] App. Br. 21, 31.

[30] TEX. PENAL CODE § 1.07(a)(25).

[31] *Chambers*, 523 S.W.3d at 690.

[32] *Id.* (citing *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)).

too broad.

We agree that an intent to defraud does not require an intent to deprive the government of money or property; but something more is required than simply an intent to cause the government entity to rely upon a false representation to act (or refrain from acting). When determining a statute's plain meaning, we may consult dictionary definitions.[33]

Here, dictionary definitions of "defraud" indicate that the dishonest means must cause an injury or loss by withholding a possession, right, or interest. For example, Webster's New World College Dictionary defines "defraud" as: "to take away or hold back property, rights, etc. from by fraud."[34] Likewise, American Heritage Dictionary defines "defraud" as "to take something from by fraud" and defines "fraud" as "[a] deception practiced in order to induce another to give up possession of property or surrender a right."[35] Other dictionaries provide similar definitions.[36]

---

[33] *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016).

[34] *Defraud*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (5th ed. 2014).

[35] *Defraud* and *Fraud*, AMERICAN HERITAGE DICTIONARY (5th ed. 2016).

[36] *Defraud*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3rd ed. 2002) ("[T]o take or withhold from (one) some possession, right, or interest by calculated misstatement or perversion of truth, trickery, or other deception."); *Defraud*, DICTIONARY OF LEGAL TERMS (4th ed. 2008) ("[T]o deprive a person of property or interest, estate or right by fraud or deceit."); *Intent to defraud*, BLACK'S LAW DICTIONARY (6th ed. 1994) ("[A]n intention to

These definitions line up with the common general meaning of "defraud." So, in the context of this statute: To be defrauded, the government must have a right or duty to act (or refrain from acting) on the matter intended to be affected by the deceit.[37]

Holding otherwise would create, as Appellant argues, a legal impossibility. A legal impossibility exists where the defendant intends to do something that would not constitute a crime (or at least the crime charged).[38] In other words, the defendant may intend to commit a crime, not because he intends to do something the criminal law prohibits, but because he is ignorant of the law.[39]

For example, a defendant may intend to prevent the government from taking a certain action against him—say, fining him. If the government has no authority to fine the defendant, then it is legally impossible for the defendant to "defraud" the government out of an opportunity to fine him—even if the defendant believes the government

---

deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power.").

[37] Of course, this definition is in addition to defrauding by causing pecuniary or property loss or some other cognizable loss.

[38] *Lawhorn v. State*, 898 S.W.2d 886, 891 (Tex. Crim. App. 1995). In that case, we also noted that legal impossibility exists "where the act if completed would not be a crime, although what the actor intends to accomplish would be a crime." *Id.*

[39] *Id.* at 892.

has that authority.[40]  The defendant could accomplish everything he intends to do, but "the resulting end would still not be a crime, or at least the crime charged."[41]  And "what is not criminal may not be turned into a crime after the fact by characterizing [the] acts as an attempt,"[42] or, in this case, an intent.[43]

We conclude that intent to defraud a government entity requires not only an intent to cause the entity to rely upon a false representation to act (or refrain from acting) on a certain matter, but also that the government has the right or duty to act on that matter.  The question then becomes whether TCOLE had the right or duty to require the firearm-proficiency records for the licensed reserve officers.  It did not.

*TCOLE Did Not Have the Right or Duty to Require the Records*

The relevant firearms-proficiency provisions in the Occupations Code state:

---

[40] To be clear, the situation here is not one of factual impossibility.  "Factual impossibility is generally regarded as existing where, due to a physical or factual condition unknown to the actor, the attempted crime could not be completed." *Id.* at 891.  The impossibility here does not arise from a "factual condition." Instead, the impossibility arises purely from the reach of the law.

[41] *Id.* at 892.

[42] 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.5(a)(3) (3d ed. 2018).

[43] *Lawhorn*, 898 S.W.2d at 892 ("Although impossibility is generally applied in the context of attempt crimes, it has also been raised and considered in the context of 'intent' crimes. . . . Moreover, this Court has historically recognized, for purposes of pleading, that 'attempt' may be used in place of 'intent.'").

(a) An agency that employs one or more peace officers shall designate a firearms proficiency officer and require each *peace officer* the agency *employs* to demonstrate weapons proficiency to the firearms proficiency officer at least annually. The agency shall maintain records of the weapons proficiency of the agency's *peace officers*.

. . .

(c) [TCOLE][44] by rule shall define weapons proficiency for purposes of this section.[45]

According to its plain language, this statute applies only to "peace officers" who are "employed." "Peace officer" is statutorily defined as "a person elected, employed, or appointed as a peace officer under Article 2.12, Code of Criminal Procedure, or other law."[46] Article 2.12 includes "peace officers" who are "reserve municipal police officers who hold a permanent peace officer license issued under Chapter 1701, Occupations Code."[47] Thus, licensed reserve officers—like the reserve officers here—are "peace officers."[48] The question then becomes whether the

---

[44] TEX. OCC. CODE § 1701.001(1) ("'Commission' means the Texas Commission on Law Enforcement.").

[45] TEX. OCC. CODE § 1701.355 (emphasis added).

[46] TEX. OCC. CODE § 1701.001(4).

[47] TEX. CODE CRIM. PROC. art. 2.12(3).

[48] According to the definition of "officer," it may appear that an officer cannot be both a "peace officer" and "reserve law enforcement officer." "Officer" is defined as: "a peace officer *or* reserve law enforcement officer." TEX. OCC. CODE § 1701.001(3) (emphasis added). Statutory context, however, overcomes the ordinary, disjunctive meaning of "or" in that definition. Looking at Article 2.12, the Legislature clearly intended for there to be overlap

reserve officers here were "employed." They were not.

The definition of "reserve law enforcement officer" in the Occupations Code directs us to § 341.012 of the Local Government Code.[49] That Local Government Code provision states, in relevant part: "The governing body of a municipality may provide for the establishment of a police reserve force. . . . The chief of police shall *appoint* the members of the reserve force."[50] Thus, according to the plain language, reserve officers are appointed rather than employed.

To be sure, the Legislature used "or" when defining "peace officer": "a person elected, employed, *or* appointed . . . ."[51] TCOLE did the same.[52] Almost always, the use of "or" is disjunctive—that is, it creates alternatives, and "the words it connects are to 'be given separate

---

between "peace officer" and "reserve law enforcement officer." The Legislature did not intend for the two to be mutually exclusive.

[49] TEX. OCC. CODE § 1701.001(6) ("'Reserve law enforcement officer' means a person designated as a reserve law enforcement officer under Section 85.004, 86.012, or 341.012, Local Government Code, or Section 60.0775, Water Code.").

[50] TEX. LOCAL GOV'T CODE § 341.012(a), (d).

[51] TEX. OCC. CODE § 1701.001(4) (emphasis added).

[52] 37 TEX. ADMIN. CODE § 211.1(a)(44) (2014) ("Peace officer—A person elected, employed, or appointed as a peace officer under the provisions of the Texas Occupations Code, § 1701.001.").

meanings.'"[53]   Here, nothing indicates that the Legislature intended something other than that ordinary meaning.  Thus, elected, employed, and appointed have separate meanings.  Here, the reserve officers were appointed rather than employed, and the firearms-proficiency statute does not apply to them.  TCOLE did not have the right or duty to require the records, and the records were not required by law to be kept.

Just to clarify, in addressing Appellant's jury charge claim, we held that the firearms-proficiency records constitute governmental records regardless of whether they were required by law.  That is because the applicable definition of governmental record only requires proof that the records were received or kept by the government for information—not that the government was required by law to receive or keep them.  With regard to Appellant's claim that there was insufficient evidence to establish an intent to defraud or harm, we hold that the State must prove that the government has the legal authority to require the keeping of records in order to show that it is legally possible to defraud the government by filing a false record.

---

[53] *United States v. Woods*, 571 U.S. 31, 45 (2013); *cf. Huffman v. State*, 267 S.W.3d 902, 904, 909 (Tex. Crim. App. 2008) (stating that a jury charge using "or" charged the violations of the statute in the disjunctive, creating an allegation in the alternative); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 116 (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives.").

In this case, it was legally impossible for TCOLE to be defrauded by Appellant's deceit and for Appellant to intend to defraud TCOLE through his deceit. There is also no evidence to show intent to defraud by causing pecuniary or property loss or some other cognizable loss or to show intent to harm by causing a loss, disadvantage, or injury to another. Consequently, the evidence is insufficient to support the intent-to-defraud-or-harm element. We sustain this ground for review.

**The Court of Appeals' Sufficiency Analysis is Incomplete**

Appellant argued to the court of appeals that the records were not governmental records because they were not required by law to be kept or, at the very least, were not actually kept for a government purpose. In Appellant's reply brief, he clarified that argument, asserting that the State was also required to disprove his statutory defense. As mentioned previously, the statutory defense states: "It is a defense to prosecution under Subsection (a)(1), (a)(2), or (a)(5) that the false entry or false information could have no effect on the government's purpose for requiring the governmental record."[54] The court of appeals stated in a footnote that Appellant did not raise a sufficiency claim regarding the

---

[54] TEX. PENAL CODE § 37.10(f).

rejection of the statutory defense.[55]

Rather than address Appellant's complaint as part of his initial sufficiency challenge, the court of appeals discussed the existence of the statutory defense to undercut Appellant's argument that a broad interpretation of "governmental record" would lead to an absurd result.[56] In effect, as part of its interpretation of the statute, the court of appeals acknowledged that the governmental purpose of the records is treated as a defensive issue, but then it did not address Appellant's argument that the State's evidence was insufficient to overcome that defensive issue.

On discretionary review, Appellant again combines the issue of the statutory defense with his argument regarding the governmental-record definition. He specifically complains that, even if we hold that this is an issue about a statutory defense rather than the governmental-record definition, the evidence is still legally insufficient.[57] Further, Appellant argues that the court of appeals' opinion did not comply with Rule 47.1 of the Texas Rules of Appellate Procedure, which requires the court of

---

[55] *See Chambers*, 525 S.W.3d at 688 n.4.

[56] *Id.* at 687 ("It is also noteworthy that section 37.10 provides for a defense to tampering with [a] governmental record in cases where 'the false entry or false information could have no effect on the government's purpose for requiring the governmental record.'").

[57] App. Br. 20.

appeals to address every issue raised and necessary to a final disposition on appeal.[58]   He specifically asks this Court to reverse the court of appeals' judgment and remand this case to the court of appeals to fully address Appellant's statutory-defense arguments.[59]

Though we have never specifically addressed when courts of appeals should address arguments raised by an appellant in a reply brief, several courts of appeals have.  Generally, an appellant may not raise a new issue in a reply brief because Rule 38.3 allows courts of appeals to decide the matter prior to receiving the reply brief.[60]  But courts of appeals can consider arguments and authorities in a reply brief that are related to the arguments in the original brief.[61]  We agree with the courts of appeals that new issues raised in a reply brief should not be considered. However, Appellant's argument in his reply brief was not a new issue; it

---

[58] *Id.* at 21; *see also* TEX. R. APP. 47.1.

[59] App. Br. 24.

[60] *See, e.g., Barrios v. State*, 27 S.W.3d 313, 322 (Tex. App.—Houston [1st Dist.] 2000, pet ref'd.); *State v. Vavro*, 259 S.W.3d 377, 379-80 (Tex. App.—Dallas 2008, no pet.).

[61] *See, e.g., McAlester Fuel Co. v. Smith Intern., Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (addressing assertions in reply brief "that can be construed to expound on [Appellant's] second issue presented in its opening brief or that reply to issues fully briefed by Appellee"); *Benge v. Harris*, No. 07-13-00064-CV, 2013 WL 4528885, at *1 (Tex. App.—Amarillo Aug. 20, 2013, no pet.) (not designated for publication) ("Accordingly, our analysis is limited to those issues and arguments raised in the original brief and those in the reply brief which are related to the original arguments.").

was related to the arguments in his original brief.

This is not a case in which the defendant raises a completely independent issue on appeal in a reply brief. Neither is it a case where the defendant raises a completely different sufficiency challenge for the first time in a reply brief. Instead, Appellant's sufficiency claim in his reply brief was part and parcel of the statutory interpretation issue he raised in his initial brief. Appellant has consistently argued that the evidence is insufficient to show that the records were kept for a governmental purpose, and part of that sufficiency claim is based on how the statute should be interpreted. Having determined that the governmental purpose of the record can be a requirement when considered as part of a statutory defense rather than as an element of the offense, the court of appeals should have considered Appellant's responsive argument in his pre-submission reply brief that the evidence is legally insufficient to overcome his statutory defense.[62]

We are unaware of any of our cases interpreting this statutory defense. The meaning of the phrase "government's purpose for requiring the governmental record" is unclear in the context of the statute. Our

---

[62] Tex. R. App. 47.1

resolution of the issue (if any should even be necessary after a remand) would benefit from a carefully wrought decision from the court of appeals.[63] Thus, we remand the case for the court of appeals to evaluate the meaning of "government's purpose for requiring the governmental record" in § 37.10(f) and, based on its determined meaning, consider whether the evidence was sufficient to overcome the statutory defense.

## Conclusion

We affirm the court of appeals regarding Appellant's complaint about the § 341.012 jury instruction. We hold that Appellant was not harmed by the absence of that jury instruction. We further hold that the evidence was insufficient to support the intent-to-defraud-or-harm element and reverse the court of appeals' determination that the evidence was sufficient. However, we reverse and remand the case to the court of appeals to evaluate the sufficiency of the evidence to overcome Appellant's statutory defense under § 37.10(f).

Filed: June 26, 2019

Publish

---

[63] *McClintock v. State*, 444 S.W.3d 15, 21 (Tex. Crim. App. 2014).